Your Honors, good morning. Jim Moody for Nyle Hooper, who brought this whistleblower action on behalf of himself and for the United States government. I'd like to reserve four minutes for rebuttal. The trial court made three egregious errors of law in this case requiring reversal. The first concerns an improper jury instruction in which the court added a factor that since the Supreme Court's decision in 1944 in Marcus v. Hess has not been required under this program, that factor being that in a fraud in the inducement case, the relator was required to prove factual falsity of the individual invoices. The counsel didn't instruction 14 provide the elements of the liability? Yes, and it was, the only instruction we're looking for covered by 14? Well, all the other instructions correctly stated the elements, but 21 added an element. It said even if you find false claims violation, 21 says, you have to go on and then find falsity in the invoices. So 21 added an element to those listed in 14. But it said if you find, and that one was a damage instruction. So they wouldn't have gotten to that if you find that Lockheed violated. Right. So in other words, if you have, if you find one, they have to find it in advance and perhaps the instruction on damages, it was a damage instruction. That was the problem. Actually, I'm sorry, Your Honor. Go ahead. Actually, it was a liability instruction. If you find the elements in 14, then you must also find factual falsity. The title of that originally talked about penalties, but that title was deleted. So there's no, there's no way to disentangle 21 from the elements. It just listed a fourth element in addition to falsity of the underbid. Well, what I'm reading, it says, if you find that Lockheed violated the False Claims Act. So that would refer back to number 14 where the in this case, they didn't find. They didn't find, so they wouldn't have gotten to the second part of that particular instruction. Well, that's precisely the problem, Your Honor. There's no way to know what they found. There was, in fact, an underbid, and they just didn't find falsity in the invoices. That's the problem with adding an element. You don't know what was in the jury's verdict. There was a, the verdict form had a place to list who you find for as a general verdict. Then it had an amount for damages, and then it had an amount. Did you propose a special verdict? Yeah, there was a line to count the invoices, yes. And so, did you object to the verdict? The form, no. The form was, the form as it was proposed was fine. It's this adding, and this didn't, this didn't get around to it until after the close of the evidence. This was something that could have been, perhaps should have been, decided before trial, but it wasn't, the judge didn't get around to it until after the close of, of our case. And so it added a fourth element to the other, other ones that instruction 14 required, and that element went to liability and not to just, for example, you know, we presume them, are there, I'm sorry, Your Honor? No, I just, looking at that instruction, I just, it just seems to deal with the amount of damages, that's all. Well, it talks about proof of falsity. Okay, proof of falsity is crystal clear. You know, an invoice is either true, because it accurately states the labor hours or the dollars spent to vendors, or it's false and I mean, the instruction was quite clear what the jury was supposed to find. The problem is, that's just not a required element. As this court ruled in Hooper 1, and also in Hendow, and as the legislative history said in 86 when the law was passed, quoting Marcus versus Hess, that each and every invoice in a contract that was procured by fraud is deemed false. So that's crystal clear that the law is that there's no separate proof of falsity. And what this instruction did, by using the word proof, Hooper had to prove falsity. That's a liability instruction, it's not a damages instruction. Well, as Judge Sill pointed out just a minute ago, you know, you look at the instructions together, you look at them as a package. You don't just isolate one particular instruction or one sentence in instruction. Right. And therefore, say all these instructions are wrong and we've got to redo the trial. That's not the way it works. Right. And the looked at in their entirety comes into play when the analysis is to the formulation of an instruction, not to improperly adding an element. When you add an element, as I think it was the Sanders case, or Guilford makes clear, when you add an element, there's no way to disentangle what was in the mind of the jury from whether they were misled by the law or misled by the facts. You said you had another argument? Oh, well, that's the, that's the, on the jury instruction, that's the first problem. And I would also point out that with all due respect to my colleague for Lockheed Martin, Mr. Troy, he actually misstated the law to the court when he said, and it's on page 49 of our excerpts, that you can't presume the end of voices to be false. And that's just a clear misstatement of the law. And unfortunately, the court bought it. Even the judge said on page 52 of the excerpts that Hooper has to prove at least one of the invoices was false. So that's why we believe it's an improper element requiring reversal as a clear error. The second problem, second ruling, or challenging, is the court's decision to exclude our expert, Dr. Malik. He was very much like the CSI crime scene expert. He basically, Hooper testified, along with Mr. Allen, who was unfortunately deceased, so his testimony was read into the record. But they explained how the underbid, what the underbid was, and how Hooper knew it was an expert report, the procedures, kind of how the crime was committed. And he was, for that reason, a very key witness. Counsel, as I understand your argument, basically excluding him, the court never really considered whether this was substantially justified or harmless, right? Under the rules. That's correct. Rule 37c1 wisely provides a safety valve, because exclusion is such a harsh remedy, those being, those two safety valves being separately. And if you find, if you find from reviewing the materials that neither of those was undertaken by the judge, and in fact the answer was that it should have been the other way, is that a basis for reversing the result here and the magistrate didn't perform the analysis, in part because Lockheed didn't disclose that they were already working on the rebuttal report, but he didn't perform the analysis. So on that basis alone, that's reversible error. Now it may be that the reversal would just instruct him to go back and do the substantial justified analysis and the harmless error analysis, but we think the record is so clear that the instruction on remand should be to admit Mr. Dr. Malik to testify. Let me just, can I just back you up just a little bit? Yes, sir. Okay, so there was a prior appeal in this case. Yes. Right? Yes. And that appeal arose from a grant of summary judgment in favor of Lockheed Martin on all claims. Yes, Judge Piaz, yes. Is that right? Yes. And prior to that time, there had been a scheduling conference order under Rule 16. Is that right? Yes. And it had been, the dates in that scheduling order had been continued several times. Three times, yes. Twice. Right. Yes. Okay. And in that scheduling order, there was a date specific for disclosing experts and exchanging reports and whatnot. Yes. Is that correct? Yes, correct. Okay. Now, case summary judgment is back down, and there are these post-remand status conferences, one in front of Judge Fischer and then one later in front of, I believe it's O'Connell. O'Connell. Yes, sir. Right? Yes, sir. Okay. So as I understand, when it came back down, as I understand what happened was that the district court judge made it, and I guess it was O'Connell, O'Connell that did this, was to make it clear that when the discovery was reopened, it was only reopened on the retaliation claim. Is that right? Yes, that's correct. And Judge Fischer's original deadline was just an expert disclosure date without limitation. Dr. Malik's report, and this is something that the magistrate simply just didn't appreciate, which is that the retaliation claim is inextricably related to the underbidding claim. But when you read Dr. Malik's report, it's very, it makes a really conclusory statement that this justifies Mr. Hooper's position. Yes. Which makes no sense. I mean, he was there, as you just got through saying when you stood up there, his whole Malik's report was to explain the, you know, the data that would show that the original bids were too low. That's correct, and that's, this point goes. What did he have to do with retaliation? I mean, what does his report have to do with retaliation? I mean, with, yeah, with retaliation. That's correct, Your Honor. What it has to do with is that retaliation, or a retaliation claim has both an object and a subjective component, in that the protected activity has to relate to, you know, a reasonable, he has to, Mr. Hooper has to believe that what he's doing is protected and what the company is doing is wrong, but also there is an objective test what the company is doing is wrong, and also to show, to be able to show if there are only a retaliation claim in this case and no underbidding case, which occasionally does happen in false claims cases, we'd still put on that expert to show what they were doing was an underbid to show that Mr. Hooper's was fired, not because he was a bad employee, but because he was nosing around where he shouldn't. So it does, it does relate, you know, to both claims, and that's why it was reasonable. Well, the hearing before Judge Fisher, they made it pretty clear, the other side made it pretty clear that the discovery on the underbidding claim had closed, it had been completed, it was over and done with. Right. As I said, if there were no underbidding claim, we still would have submitted Dr. Malik's report to show that his conduct was objectively reasonable for purposes of the retaliation claim. Now, the stronger argument, though, really of the three, that goes to the fact that it was timely under the new order. The stronger argument really is lack of prejudice and, or harmless error, and Rule 37C1 provides that as a safety valve. Here, this is a classic example of lack of prejudice, because it was six months before trial, the parties had already provided time for expert discovery. Let me be forthright with you. What bothers me a little bit is it looks like, to me, and you can correct me if I'm wrong, okay, that after it came back down on remand, and it was pretty clear that discovery on the underbidding claim was over with, and the judge would not extend the deadlines on the underbidding claim, although I'm not sure there was a precise motion to extend, to allow additional designation of experts under the underbidding claim after it came back down from the Court of Appeal. Nonetheless, though, you get the feeling at this, and you read Dr. Malik's report, is that what you did was try to find a way to get around the district court's order. Well, it's, I guess my answer to that would be. I mean, that kind of, that bothers me, I'll be honest with you. Well. Rather than going back to the district court and say, hey, look, district judge, this is what we need to do, we need this expert, and here's why we need this expert, and to lay it all out in a very explanatory way. You didn't do that. Instead, you just did it, and then these guys then filed their motion to strike. Right, and the answer to that, Your Honor, is that it's not, I mean, it was Lockheed that originally moved to dismiss the retaliation claim, so the reason we had to have this in two stages is really because Lockheed got that dismissed on jurisdictional grounds, this court reinstated. So it's not a problem of our making that the retaliation and the underbidding claims kind of were on two tracks, but the, it's not, I mean, it's not our fault, in a sense, that the evidence of objective reasonableness of Hooper's inquiry on productivity rates had to do with both retaliation. In other words, even if there were, as I said, if there were no underbidding claim at all. He's an expert witness, though, so what testimony was he giving, would he be giving, concerning retaliation in particular, as opposed to an opinion that he would have given on the issue of underbidding? No, that Hooper's inquiry was objectively reasonable, that because the company was, in fact, doing underbidding, and that rebuts Lockheed's argument, he was fired for being a poor employee, as opposed to, as I said, looking into matters that were, you know, could potentially expose the company to liability. So he's really there for both purposes, but as I said, I think the better argument, really, for purposes of reversal, we do honestly believe it was timely, but the better argument is lack of prejudice, and that's a clear safety valve under Rule 37C1. What diligence did he engage in, let's say under Rule 16, as opposed to Rule 37? And what diligence did your client engage in to ensure that this was resolved in his favor? In other words, the expert would be allowed to testify. Well, I think, I was asking about the other prong, the other safety valve, which is substantially justified. Well, I know under Rule 37, but also Rule 16 is applicable here. You have to look back to see if he complied with Rule 16 in order to ensure, in order to amend the Rule 16 order to allow the expert testimony late, you have to show established due diligence. Good cause. Right. And that's the, as I said, the Rule 37C1's requirement for substantial justification is the flip side of that Rule 16. Had we made a Rule 16 motion, we would have made exactly the same arguments we made in the Rule 37C1 opposition. It was substantially justified. Your argument here is that Rule 16 doesn't apply because it was timely under the post-remand scheduling order. Yes. Because it related to retaliation. Yes. It was just plain old timely. Yes. Yes. We honestly, at the time, believed it was timely because it did relate to retaliation. So what if we disagree with you that it was timely? Well, if you disagree, then we look to the next safety valve, which is substantial justification for the delay. Substantial justification is Judge Silver was trying to get in. Okay. The substantial justification was the games that Lockheed played in the pre-appeal deadline with respect to these CR-SIM cost reports. The contract required they be kept. They were not. They were destroyed. Lockheed misled us, or not misled, but it gave us input files that turned out couldn't be read. And they kept sort of changing their tune, saying that, well, they couldn't be read. They had finally admitted they could be read, but they produced different results because the software was now on version 5 instead of version 2. And all of this eventually ran out the clock on getting these CR-SIM reports so that Dr. Malik could analyze them. So the reason for the substantial justification in getting all this done late was really because Lockheed played games with the underlying CR-SIM input files. And we believe they should be able to both profit from playing those games and then keeping out our expert once we were able to get the old software, pay a huge licensing fee, get old computers, sort of circa 2000 and old operating systems to be able to recreate the environment as it existed back at the time in Lockheed Martin. So we were able to eventually do that and give these documents to Dr. Malik to analyze. That's a substantial justification. And that is, as I said, a completely independent safety valve under Rule 37C. And, you know, again, the overriding point is that there was just no prejudice here because Lockheed submitted timely, and it's time for a rebuttal report, timely submitted a rebuttal report, and then we had agreed separately on a time to depose the experts as well. And this was still six months before trial. So there just was no prejudice, even assuming, as Your Honor suggested, the disclosure was untimely. That the court, this court, needs to give effect to those two safety valves in 37C1. The third argument is with respect to Stephen Pollyard. He was the Air Force official responsible for what's called sustainment. That he was basically the customer, represented the customer who received the software at the end of the contract. And his testimony was basically that it was, we sort of summarized in our brief, calling it performance testimony. It was incomplete. He said they delivered 80% of a product and got paid 100%. It didn't work, it was full of bugs, it lacked documentation. And importantly, this lack of documentation led to a launch scrub of a spy satellite that ended up costing the government, in his estimation, about $42 million. In just two sentences, Judge O'Connell excluded his testimony without conducting the explicit balancing of probative versus prejudice under Rule 403. And in particular, that balancing has to produce a result to show that there's undue prejudice, not just prejudice. And it is substantially outweighed by any relevance. It's just not a shred in the record. What about the colorful opinions he was going to give in his testimony? Well, he said one of the risks was that a missile might land in Disneyland. That is, in fact, one of the risks. That's why you want safe software. So it may have been colorful, but it arguably wasn't inadmissible. Witnesses are not required to be wooden. They can use lay opinion. They can give their own colorful testimony. The better solution, that's one sentence out of a seven-hour deposition. The better solution would have been to simply let him testify, either have a cautionary instruction at the beginning of his testimony, or if something did come out, just the usual trial practice, would be to have the other side object and ask for limiting instruction at that point, or that the so-called colorful testimony be stricken. But to exclude him, just all in one fell swoop, giving him the evidentiary guillotine, in effect, was clearly improper because the law requires that the explicit balancing be done on the record. So there's something for this court to review. What case is it that a district judge has to make sort of implied findings or explicit statements that they've done some balancing? I thought in our case I said if you can tell from the record that they've done the balancing, that that's fine. I think that's a fair statement of the law, but that's the problem here. You can't tell from the record. You look at the record, there's two sentences, and Judge O'Connell says, well, it might have been that Lockheed's software engineers were incompetent. Well, she supplied that explanation. That was never Lockheed's defense. I suppose they could have made it, but it's not up to the trial judge to start giving possible defenses. Well, she doesn't sit there as a bump on the log. She's observing everything that takes place and is drawing her own impressions about the evidence. Right, and I think if – Our case doesn't require district court judges to make explicit findings. Well, but either there has – the record as a whole has to show there was an explicit balancing, and there's nothing in the record here, and I don't think Lockheed points to anything, so that there was any explicit balancing. I agree with Your Honor that it doesn't have to be detailed findings set forth like in an order. It can be somewhere else in the record, but this is so thin, and the exclusion was so broad. If he had perhaps testified for her halfway through his testimony or she excluded part of his testimony or excluded the Disneyland reference, maybe there would be some deliberative thought into it, but when she was reviewing the testimony of Mike Allen, as I said he was deceased, it was like 30 pages of transcript where she goes through literally every sentence of his deposition and admits this and excludes this. Some things we thought about, some things we didn't, but there was clearly a lot of care put into that. When with Mr. Polyard, it was just gone, guillotine, all of it's out. That's improper. Okay, you're over your time. Okay. Thank you, Your Honor. May it please the Court, Fred Rowley, Jr. for Lockheed Martin Corporation. Your Honor, quickly on the jury instruction issue, just to pick up on a question that Judge Silver asked, the first three words of instruction number 21, which is the instruction that plaintiff is challenging here, makes clear that it's not a liability instruction. It's an instruction that goes to the number of invoices and therefore to statutory penalties. And this is, in fact, how plaintiff argued it in closing. I'd just note that in closing, plaintiff's counsel, quote, stated to the jury, quote, we ask you to answer the judge's interrogatory requiring you to count the invoices per the judge's instructions. That's instruction 21. So the instruction was argued to the jury in precisely the way the instruction reads, and that is an instruction that presupposes a liability finding and simply asks for the counting up of invoices, identifying which invoices. Well, it doesn't say that. It doesn't say all you've got to do is count the invoices. Your Honor, that's right. It doesn't say that. It does link up. It says you must identify each specific individual claim or payment. Judge Pius, that's right. An invoice or another payment demand that Mr. Hooper proved to constitute a false claim. That suggests that it might be an individual – they have to identify an individual claim that was false. Judge Pius, it doesn't say that. It does link up with the interrogatory in the special – in the jury verdict form that asks for the number of invoices, so it links up with that. I don't think that it could reasonably be read to require an independently false statement, which is what the plaintiff is suggesting, given the first three words of the instruction and given the jury instructions as a whole. Because as Your Honor pointed out, when you are challenging the way that jury instructions are formulated, and the question is whether a particular instruction could have misled the jury, you have to look at the instructions as a whole. And the liability instructions here, and I would point to Instruction 14, Instruction 18, and Instruction 15, permitted plaintiffs to advance their theory that the underbidding, both with respect to the original Loral bid and the subsequent contract change proposals, rendered the subsequent invoices, the invoices that flowed from either the original contract bid or the contract change proposals, rendered those false or misleading. Was it the argument that every claim that was submitted once the contract was approved was entitled to be included in the damage award? Your Honor, the plaintiff challenged, that wasn't quite their theory at trial. The plaintiff challenged not just the original Loral bid, right, the bid at the outset of the contract. The plaintiff also asserted that there were false estimates submitted in support of specific contract change proposals that followed. So depending on which underbidding theory the jury adopted, there may be different invoices that flowed from either the contract change proposal or the original bid that would have been rendered false. So plaintiff's own theory couldn't have been that every, in blunderbuss fashion, that all the invoices would be rendered false because it just depended on which underbidding the jury adopted. And that's why you see Instruction 15 in the jury instructions. That was a jointly, that was based on a jointly submitted jury instruction. And that asked the jury whether there was a false or fraudulent invoice or claim for payment submitted. That flowed directly from the plaintiff's trial theory. And in that respect, all the instructions read as a whole closely tracked the underbidding theory that the plaintiff was advancing at trial. Now, counsel makes an interesting argument in response to my question that you cannot tell what the jury did, because with respect to Instruction Number 21, it could be that the jury didn't get to or that they did find liability, but they couldn't find, as they would be required to do, that it wouldn't, they didn't go through and find and identify each of the specific invoices. So you, so is it, is that possibility enough? Or is it, as you have said, and I have suggested, that you look at the jury instructions as a whole in context with the facts that were presented? Two responses, Jed Silver. First, because this is a formulation challenge, because the idea is that this instruction could have misled the jury, the court does have to consider the instructions as a whole to see whether they could have been misleading. The second response is that the first three words of that instruction required the jury to find consistent with the plaintiff's own trial theory that there was underbidding that led to invoices being rendered false or misleading. And so given the first three words of the instruction, the only reasonable inference from the record, given that juries are presumed to read the instructions accurately and to follow the instructions, they're presumed to follow the instructions, that they wouldn't have gotten to the latter part of this instruction if they hadn't found liability. And the liability theory is one that the plaintiff's controlled and it was based on underbidding, as Instruction 14 accurately describes. Counsel, I'd like to ask you about the Rule 37C1 issue. Yes, Judge Smith. Let's assume for arguendo, let's assume that in going through the evidence of when Lockheed produced what it did and how it did it, that we conclude that it was either the delay on plaintiff's part to produce what it was supposed to was substantially justified or harmless. Let's just assume, arguendo, that's the case. Is there any case law that suggests that that would justify a remand for a new trial, or is it something less? Your Honor, the answer is no. It would not call for that remedy for the reason that we argue in our briefs, and that is because any error on that score, and we submit that there was no error on that score, but on your Honor's hypothesis, the Court still wouldn't reverse. And it wouldn't reverse because any error with respect to Rule 37 and the application of that default sanction would have been harmless. I was assuming in part that it was not harmless. That's right. If it is either substantially justified or harmless, rather and harmless, would that require a new trial, a reversal of a new trial? You mean if your Honor concludes that? If you conclude it's not harmless, that it is harmless, excuse me. If you conclude that the error was harmless, there would certainly be no new trial. No, you're talking about a different thing. Judge, I think the question was directly to Rule 37. Yes. Rule 37, not if you find a violation of Rule 37, that may not yet result in a new trial. And that's exactly right. I'm trying to get your view. Yes, Your Honor. If 37C1 was violated by a district judge, she misunderstood, she should have considered this, that, and the other, and concluded it was either substantially justified or that it was harmless. In that situation, what's the remedy? Your Honor, well, it's interesting because Rule 37C, because of the way it operates, and we haven't gotten to that yet, but because of the way it operates, it's framed in terms of whether the late disclosure was not harmless. Right. Whereas the harmless error test asks sort of the converse question whether an error was harm, was prejudicial, was harmful, whether it prejudiced the plaintiff's case. We submit that really for the reason that you have identified, that you couldn't find that the Rule 37, that the district court's application of the Rule 37 default standard here was not harmless. I get that, Your Honor. I understand. But you're basically rejecting the hypothetical. You're saying it was harmless. But what I'm trying to understand is if we get all the way through and find out 37C1 was misapplied here, what do we do? Do we reverse and send it back for a new trial? Or is there something else that the rules permit or require? Well, Your Honor, I think if the court concluded that the exception applied, and that the admission of that expert report would not have been harmless, I suppose it would follow that the error was prejudicial. I suppose that those two things, I mean, if you look at the language of the rule, they're related. So if you assume that, then what do we do? Then, Your Honor, I suppose you would, if they're related and they're coextensive, as Your Honor is suggesting. That gets to the question, of course. Well, I'm not sure that they're coextensive. Judge Pius, it's a little odd because that rule is framed in the negative, right, not harmless. Whereas the harmless error test is framed in exactly the opposite way. In the harmless error test, you would take a look at all the evidence presented at trial. In this harmlessness inquiry under Rule 37, you're looking to see what harm, you know, in responding perhaps to that particular piece of evidence. I think that's right, Your Honor. It's a more precise inquiry. I think that's right. That's why we argued it that way in our briefs. In other words, we mounted a harmless error analysis. But the problem here, if you assume the question that Judge Smith proposed, is that we can't, and you look at Malik's report. Yes. And you say, well, if this had all been admitted into evidence, you know, it might have helped the plaintiff's case. But we can't then look at what the counter evidence would have been because the counter experts report is not part of the record. Well, Your Honor, it's not part of the record, but that gets to the threshold question of whether there was a Rule 37 error here. And we submit that there was not a Rule 37 error. Again, with respect, counsel, I'm trying to get your help. Yes. And put it to basic terms. If there was a 37C1 violation, what do we do? What is the remedy under the circumstances? Your Honor, I think that you would, as our briefs suggest, look at a pivot to the harmless error test, and that would include not just the harmless error as opposed to harmless under 37C1. I think so. So that question, that specific question, Your Honor, would require you to examine whether if the expert report had been disclosed, whether Lockheed would have been able to take sufficient action to respond to the expert report in advance of trial. As Judge Paez noted, that's a pretty specific inquiry. It's a little different from looking at the evidence. But it's all speculative, isn't it? Because we really don't know what Lockheed would have done. Your Honor, I think actually, contrary to what my friend Mr. Moody suggested, it isn't speculative because the prejudice that was articulated by Lockheed in the district court resonates quite strongly with the prejudice that this Court has recognized flows from this kind of late disclosure. What you're saying is that Lockheed made the argument it would have made no difference if you admitted it, would have made no difference, it's harmless error? We made that in our briefs on appeal, Your Honor. In the district court. And I mean, did you look at the entire record? We did. And the argument was it would, no matter what, you still would have been, the verdict would have been in favor of Lockheed, even if Malik's testimony would have been admitted. Right, it wouldn't have changed the result, and this goes back to Judge Smith's question, which I think I understand a little better now. That is a little different inquiry than the question of, well, what does Lockheed do now? Would it have been harmful to Lockheed's trial preparation if this late report had been allowed? Those are quite different. We argued that the admission of that Malik report wouldn't have changed the result at trial. We argued that in our briefs on appeal. I would note, in response to my friend Mr. Moody's argument, that we did argue that the late disclosure of the Malik report would result in a trial. That is an argument that's been rejected by this court. It was rejected in Ollier, where the time from disclosure to trial was actually longer. It was eight months compared to the six months that my friend Mr. Moody noted in his initial presentation. As the Ollier court explained, the last thing a party or its counsel wants in a hotly contested lawsuit is to make last-minute preparations and decisions on the run. But you had already designated your own expert to meet Malik. Yes. Judge Pius, I would submit that that only highlights the prejudice from the late disclosure, because at the same time we had to commission this rebuttal expert report, we're moving to strike the Malik report as untimely. We were on the eve of summary judgment proceedings on the retaliation claim, with trial to follow. We're six months out. As the court explained in Yeti, when there's a late disclosed expert, the other party has to commission expert report, prepare that witness for deposition, prepare the other side's late disclosed, prepare to examine the other side's late disclosed expert, and then prepare to examine both these witnesses at trial. That is palpable prejudice. Let me just focus on the facts as I understand them in this case. As I understand it, Hooper disclosed the Malik report September 9, 2013, six months and nine days before the scheduled trial date. Lockheed was able to prepare a rebuttal expert report, which served one month after the report on Hooper. So I'm in trouble with how deeply burdensome this was for you. Your Honor, if we had to, this gets back to what the court observed in the Allier case. When you've got a late disclosed expert like this, particularly on a subject matter on which discovery had been closed for three years, you have to ramp up the machinery addressing that subject matter or that expert. And that's exactly what we would have had to do here if the Malik report had been allowed. If the court would permit, and if the court would please, I can respond to the substantial justification points that Mr. Moody made as well, because the contention there that Lockheed, quote, played games, that contention was made to the district court three times. It was made twice in motions before the initial appeal in this case on a motion to extend the summary judgment briefing and a motion to extend discovery. Both times that contention was rejected. The plaintiff advanced the same theory in seeking to oppose exclusion of the Malik report. The theory was again rejected, and with good reason. The native data for the CRCM report that the plaintiff claimed he needed was disclosed in July of 2010, well in advance of the discovery cutoff. As the district court noted, the plaintiff could have moved to compel. That's why the district court declined to extend the discovery deadline to allow the plaintiff to move to compel. The plaintiff had designated witnesses from the company that produced that software, the Galarith company. Back in April and June of 2008. So as we argue in our briefs, what the record shows is, if anything, a want of diligence on the part of the plaintiff with respect to getting this Malik report together. I would just like to note that on Rule 37, that the way that the rule is structured doesn't require the district court to make specific findings before applying that default remedy. That the way the rule is framed, with the exceptions being substantial justification and a lack of harmlessness, those are, first of all, have to be shown by the party opposing the sanction. And second of all, they don't need to be specifically found by the district court just to apply the default sanction. If that were the case, the burden would effectively shift to the party seeking to vindicate Rule 27. In invoking the Rule 37C remedy. And that would be contrary to the Rule 37C remedy was intended to deal with the situation when you're at trial. And you're in trial, and all of a sudden somebody comes up with an exhibit or something and says, hey, we just discovered this exhibit. We've got to get it admitted into evidence. But apparently it can be applied in this situation as well under the case law. Judge Baez, if you look at the cases, actually most of them are pretrial. So Yeti's pretrial, Allier's pretrial, most of the cases that we cite are pretrial. And we submit there's good reason for that. If there are no further questions. I'll be very brief, Your Honor. I want to correct one thing my colleague said. He said that the substantial justification argument was considered and rejected by Magistrate Walsh. That's completely false. Magistrate Walsh said the reason for the delay was unknown, unknowable. So it wasn't even considered at all. And that's part of the problem we have here. If I remember correctly, I was looking at the record, you did move to postpone the summary judgment hearing. Right, that was pre-appeal. That's all pre-appeal. The post-appeal, when it got to Magistrate Walsh, the reason for the substantial justification prong, Magistrate Walsh said the reason for the delay was not known. So even though we put it in our papers, that's what he got wrong. You know, it was, you know, Lockheed, this all started because Lockheed destroyed the CRSIM output files. We had to just kill ourselves to recreate this stuff. And Lockheed's trying to profit from that now. We put that before Magistrate Walsh, and his answer was, rather than reading it and responding to it, he said it was unknown, the reason for the delay. So that's part of the error he made compounded by a deference shown by Judge O'Connell. Why didn't you just file a motion to extend the Rule 16 disclosure dates for experts? At the time, I mean, we believed it was. Post-remand. Why didn't you just file straight up, you know, straight up, just, you know, Judge, please extend these dates for these reasons. We got good cause. As I said, we believed it was timely anyway. Because the original, Judge Fischer's original order didn't limit it. It was just a new expert disclosure deadline, period. And that's different from doing a lot more depositions and derogatories and things like that. This was just a naked expert disclosure deadline. So we didn't think a Rule 16 change was needed. Even though the expert disclosures are usually set forth, the dates for disclosure in the Rule 16 order. And you have to establish good cause and just make the motion. In Judge Fischer's amended, new, post-appeal Rule 16 order, she had a new expert disclosure deadline, period, full stop. We met that deadline. When you read the discussion that took place at that status conference, it's pretty clear, though, that she says that the fraudulent discovery part of the case, that already the discovery had closed. And her final comment was she'd leave it all up to the magistrate. In response to Judge Smith's question about what to do if you find a Rule 37 violation, first, the substantial justification and harmless error are, it's or, it's not and. We don't have to prove both. Either way, either one of those safety valves will work. And I think the only question is whether this court does the analysis and instructs the district court or remands it with instructions to do the analysis. Well, just because, even if you assume there's error, you still have to ask whether or not you get a new trial. That's correct. And that either, I mean, somebody has to do the, I mean, either this court. So if you assume that they said, well, we didn't, you know, if you just look at the theory of their claim, of your claim, which was the uncertainty of the cost that the Air Force was anticipating, that that whole, the whole nature of the contract was such, it wouldn't make any difference if Malik had testified. Right. And that's, to get the remand, we'd have to, this court has to come to a belief that Malik's testimony could have made a difference. Let me ask you, is there any case that you can refer us to where because Rule 37C1 was violated, there was a remand for a new trial? Yes. Just recently in June. It's just, it's a new case from, I think, from June. It's Township versus United States. What court? Ninth Circuit. We'll send a 28-J letter in on this. Is it a published opinion? In other words, is it in the federal appendix or is it a federal reporter? I'm just looking. I think it's one of those ones governed by 32.1, Ninth Circuit Rule 32.1. But basically, the error there was that there was a failure to do the lesser sanction analysis under Lassiter. So there's a five-part analysis that this court's opinion in Lassiter sets forth. If there's been a Rule 37 violation, the analysis that Magistrate Walsh or Judge O'Connell should have done was the five-part analysis. Once we met our burden, it was showing either, in this case both, substantial justification. So you're saying in that case it was remanded for a retrial, and not the analysis that should have been done by the judge? It was the analysis that should have been. The judgment was reversed and it was remanded, presumably, to do the analysis. And that would be an approach this court could take, is just reverse the judgment and remand to do the Rule 37 analysis that wasn't done. We think the record is so clear on both. That's your argument, is that the record is so clear as a matter of law that we should reverse for a new trial. Well, reverse and instruct the malic report to be admitted. Now, a lesser approach would be to reverse and instruct the court to do the analysis. Do you think that an active judge on the wheel of the Central District of California would gloriously make a finding that would require her to have a whole new trial? Well, because this case has been here now twice, we would obviously prefer, since the record is so clear, they turn in their own report. There's just no prejudice here, period. That ends the matter. So we think that record is so clear that this court should say, let the malic report in and have a new trial. And let me just ask you, this is a very interesting inquiry by Judge Smith. So if it goes back for the purpose of determining if the judge, if we were to send it back for the purpose for the judge to do the analysis, then can you and defense counsel offer additional evidence for the judge to do that analysis to establish that it was not harmless on your part or that there wasn't substantial justification? You understand what I'm saying? Or she has to look only at the record that we're looking at. Well, that issue was, we briefed it extensively to Magistrate Walsh and Judge O'Connell. Lockheed didn't even claim any prejudice at all at the time, because they obviously did their own report. You're not going to offer anything else. The record is what it is if it was sent back for that analysis only. I gather she would take a look at both the malic report and the report they would have admitted. Yes, of course. And then decide whether or not it might have made a difference. Yes, of course. Thank you.
judges: Paez, M. Smith, Silver